UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES E. BROWN,

                           Plaintiff,

        -against-                                          6:15-CV-0849 (LEK/ATB)

ONEIDA COUNTY, *et al.*,

                           Defendants.

—————————————————————

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On July 10, 2015, Plaintiff James E. Brown commenced this action against Defendants

Oneida County, the Oneida County District Attorney's Office, the Oneida County Police

Department, the Oneida County Sheriff's Department, Oneida County Correctional Facility, the

Town of Marcy, the Town of Marcy Police Department, Assistant District Attorney Robert A.

Bauer, Investigator Nicholas Loconte, Correctional Officers Chapman and John Does 1–6,

Sergeant John Doe, and Police Officer John Doe. Dkt. No. 1 ("Complaint"). Plaintiff alleges the

following claims against Defendants pursuant to 42 U.S.C. § 1983 or New York state law:

(1) malicious prosecution; (2) false arrest and false imprisonment; (3) malicious abuse of

process; (4) liability of town and county for constitutional violations; (5) failure to train and

supervise; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional

distress; (8) unlawful strip search; (9) negligence; (10) negligence in hiring, screening, retention,

supervision, and training; (11) respondeat superior liability; (12) supervisory liability;

(13) trespass; and (14) attorney fees. Compl. ¶¶ 71–144. Plaintiff seeks two million dollars in

compensatory damages and three million dollars in punitive damages for each individual claim. Id. ¶¶ 80, 83, 89, 101, 109, 113, 116, 119, 122, 127, 130, 133, 139, 142.

Currently before the Court is a Motion to Dismiss, brought by all remaining Defendants[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 10 ("Motion to Dismiss"); Dkt. No. 10-1 ("Memorandum"). Plaintiff has requested ;leave to amend his Complaint, Dkt. Nos. 19 ("Motion to Amend"); 19-1 ("Proposed Amended Complaint"), and also opposes the Motion to Dismiss, Dkt. No. 20 ("Response"). Defendants filed a Reply. Dkt. No. 22 ("Reply"). For the following reasons, Plaintiff's Motion to Amend is granted, and Defendants' Motion to Dismiss is granted in part and denied in part.

## II.    BACKGROUND

### A.  Plaintiff's Original Complaint[2]

On April 7, 2013, Plaintiff was pulled over under suspicion of speeding and was issued a ticket for disobeying a traffic device. Compl. ¶ 34. When Plaintiff appeared in Marcy Town Court on May 2, 2013, he met with Bauer to discuss a resolution of the ticket, as is customary in town court. Id. ¶ 38. Plaintiff informed Bauer that he was not speeding and that there were no traffic devices in the area that he could have disobeyed. Id. ¶ 39. Then Plaintiff made a statement

---

[1]  Counsel for the Town of Marcy advised Plaintiff via communications extrinsic to court filings that the Town of Marcy does not maintain a police force and therefore cannot be responsible for Plaintiff's claims arising out of his arrest. Dkt. No. 24. Plaintiff and the Town of Marcy filed a stipulation of dismissal on January 26, 2016, and the Court terminated the Town of Marcy as a defendant on January 27, 2016. Dkt. Nos. 26, 28.

[2]  Consistent with the Court's duty to construe a plaintiff's factual allegations in the light most favorable to the plaintiff in addressing a motion to dismiss, the allegations of the Complaint are accepted as true and form the basis for this section. See Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011).

to the effect of "there's a lot of fraud going on," believing that the officers had fabricated the ticket. Id. ¶ 40. Plaintiff thought Bauer was infuriated by his statement. Id. ¶ 41. Over Plaintiff's objections, Bauer put Plaintiff's case on for trial. Id. ¶¶ 42–43. On May 9, 2013, Plaintiff returned to Marcy Town Court without an appointment intending to resolve the ticket and avoid a trial. Id. ¶¶ 45–46. After he was told by a court officer that Bauer did not want to speak with him, Plaintiff was advised that he could sit in the courtroom. Id. ¶ 47. The presiding judge gave Plaintiff a card with Bauer's contact information and instructions that Plaintiff could call Bauer but that he would be unable to speak with Bauer that day. Id. ¶ 48.

A conversation then occurred between Plaintiff and Bauer in the parking lot, which was initiated by Bauer when he pulled his car next to Plaintiff's vehicle. Id. ¶ 50. Bauer asked Plaintiff if he still wished to resolve the ticket, and when Plaintiff responded affirmatively, Bauer gave him a new court date for May 14, 2013. Id. ¶ 50–51. On or about May 9, 2013, Plaintiff was called to appear at the State University of New York Police Department, where he was given new tickets. Id. ¶ 53. Plaintiff was informed that his original tickets for disobeying a traffic device were increased to speeding tickets and that Bauer wanted Plaintiff to have the new tickets. Id. ¶¶ 53–54. The next day, Plaintiff was arrested at work and escorted to the Oneida County Jail on charges of stalking in the third degree, harassment in the first degree, menacing in the second degree, and obstructing governmental administration in the second degree. Id. ¶¶ 55, 57, 72. All of these charges were apparently related to Plaintiff's interactions with Bauer.

On arrival at Oneida County Jail, Correctional Officers Chapman and John Does 1–6 pointed an object at Plaintiff and instructed Plaintiff to remove his clothing. Id. ¶ 58. During the strip search, Plaintiff was laughed at and mocked. Id. ¶ 60. Once he was naked, Plaintiff was

strapped to a "wheeled chair" and covered with a clear gown. Id. ¶ 61. He was then wheeled to the lowest floor of the jail and left to sit there, where he began to suffer an anxiety attack and was given no treatment. Id. ¶¶ 61–62. Plaintiff claims that he was given no food for approximately twenty-four hours. Id. ¶ 63.

Plaintiff's Complaint stated that the tickets were dismissed and terminated in his favor on September 17, 2015. Id. ¶ 74.[3]

### B. Plaintiff's Amended Complaint

Plaintiff's Proposed Amended Complaint is largely similar to his original Complaint. Plaintiff omits the Town of Marcy and its police department from the list of defendants and removes all of the state law tort claims that were originally brought against Defendants. In addition, Plaintiff adds two new claims of excessive force and failure to intervene under § 1983. Plaintiff also alleges that either Loconte or police officer John Doe effectuated his arrest and that Bauer ordered police officers to follow Plaintiff in his car. Proposed Am. Compl. ¶¶ 52–53.

## III. LEGAL STANDARD

### A. Motion to Dismiss

For pleadings, the Federal Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, a plaintiff must offer more than conclusions or a formulaic recitation of the elements of the claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The plaintiff does not need to set out "detailed factual allegations," but must assert more than "an unadorned, the-defendant-

---

[3] Considering that Plaintiff's Complaint was filed on July 10, 2015, the Court assumes that the year was a typographical error.

unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). A complaint is insufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (alteration in original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

**B.  Motion to Amend**

Generally, a party may amend his or her pleading once as a matter of course. Fed. R. Civ. P. 15(a)(1). When the time to amend as a matter of course has elapsed, the plaintiff may amend his complaint with the written consent of the opposing party or the court's leave. Fed. R. Civ. P. 15(a)(2). Where there exists no apparent reason for a court to deny a plaintiff's motion to amend, leave to amend should be "freely given." Price v. Gizzi, No. 11-CV-976, 2012 WL 2120028, at *3 (N.D.N.Y. June 11, 2012) (Kahn, J.) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Potential reasons to deny a motion to amend include undue delay, bad faith, failure to cure deficiencies by previously granted amendments, undue prejudice to opposing party, or futility of amendment. Id. "Where 'futility is an appropriate basis for denying leave to amend, such denial should be contemplated within the standards necessary to withstand a motion to dismiss pursuant to [Rule 12(b)(6)].'" Id. at *4 (alteration in original) (quoting Gorham-DiMaggio v. Countrywide Home Loans, Inc., No. 08-CV-19, 2009 WL 1748743, at *3 (N.D.N.Y. June 19, 2009)).

## IV.  DISCUSSION

### A.  Plaintiff's § 1983 Claims

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. There are no substantive rights created by § 1983; rather, it provides the means for "vindicating federal rights elsewhere conferred." Dzwonczyk v. Syracuse City Police Dep't, 710 F. Supp. 2d 248, 261 (N.D.N.Y. 2008) (quoting Patterson v. County of Oneida, 375 F.3d 206, 255 (2d Cir. 2004)). A claim pursuant to § 1983 requires an allegation "(1) that some person has deprived [the plaintiff] of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." Id. (quoting Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005)).

### 1.  Claims Against County Agencies

Defendants contend that Plaintiff has named incorrect parties as Defendants in his Complaint. Mem. at 2. Specifically, Defendants state that since Oneida County has already been named as a defendant, claims against its departments are redundant. Id. "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." Macaluso v. Nassau Cty. Corr. Ctr., No. 13-CV-6206, 2014 WL 1401429, at *4 (E.D.N.Y. Apr. 8, 2014) (alteration in original) (quoting Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477

(E.D.N.Y. 2002)); accord Moffet v. Town of Poughkeepsie, No. 11-CV-6243, 2012 WL 3740724, at *1 n.1 (S.D.N.Y. Aug. 29, 2012). The district attorney's office, police departments, sheriff's department, and correctional facility are all administrative arms of Oneida County. As such, Oneida County is the proper defendant in this case. Therefore, all claims against the Oneida County District Attorney's Office, Oneida County Police Department, Oneida County Sheriff's Department, and Oneida County Correctional Facility are dismissed.

### 2. *Monell Claims Against Oneida County*

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). The Supreme Court has stated that "governments should be held responsible [in § 1983 claims] when, and only when, their official policies cause their employees to violate another person's constitutional rights." City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988). Therefore, in order for a municipality to be liable under § 1983 for acts of a public official, the plaintiff must plausibly allege that an official policy of the municipality caused the constitutional injury. Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell, 436 U.S. at 690–91). To plead the existence of a municipal policy, Plaintiff must allege one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate

indifference to the rights of those who come into contact with the
municipal employees.

Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010). In addition to

pleading the plausible existence of a municipal policy, a plaintiff must allege an "affirmative

link" between the municipal policy and the constitutional violation at issue. Oklahoma City v.

Tuttle, 471 U.S. 808, 824 n.8 (1985).

Plaintiff brings the following claims against Oneida County pursuant to § 1983: malicious

prosecution, false arrest, malicious abuse of process, liability of the county for constitutional

violations, failure to train and supervise, unlawful strip search, intentional infliction of emotional

distress, and supervisory liability. Defendants have moved to dismiss Plaintiff's Monell claims

due to Plaintiff's failure to plead facts regarding the existence of a municipal custom that would

make Oneida County liable under a Monell claim. Mem. at 10.

Plaintiff's Complaint contains many conclusory statements regarding municipal policies.

Plaintiff states that Defendants "had in effect de facto policies, practices, customs, and usages

that were a direct and proximate cause of the unconstitutional conduct of the Defendant police

officers, investigators, prosecutors, their agents, servants and employees." Compl. ¶ 91. The

policies that Plaintiff refers to are "arresting persons without probable cause, providing false

information to prosecutors, falsifying police reports and affidavits, working and conspiring with

others under a wall of silence, unlawfully utilizing law enforcement and testifying and/or

swearing falsely under oath." Id. ¶ 92. Plaintiff fails to substantiate these conclusory allegations

with facts that would meet the required plausibility standard. Plaintiff's claims amount to

"boilerplate statements" that Oneida County employees were acting according to a municipal

policy with no facts that support those statements. Rifenburg v. Hughes, No. 15-CV-978, 2016 WL 866344, at *3 (N.D.N.Y. Mar. 3, 2016); accord Duncan v. City of New York, No. 11-CV-3826, 2012 WL 1672929, at *2–3 (E.D.N.Y. May 14, 2012). "[T]o survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) (quoting Santos v. City of New York, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)). Plaintiff's Complaint at most alleges unconstitutional actions taken by employees of a municipality, which is insufficient to establish municipal liability. Monell, 436 U.S. at 691. Plaintiff has failed to meet the plausibility requirements to survive a motion to dismiss.

Plaintiff attempts to bolster his Monell claims in his Proposed Amended Complaint by adding more conclusory statements. Plaintiff adds that the Oneida County District Attorney's office has a policy and custom "of allowing the prosecutors whom cover town court jurisdictions to hold an unreasonable amount of power [and the] ability to [single handedly] file charges against individual[s] without having to obtain authorization from a supervisor or seek authorization from a hierarchical chain of command." Proposed Am. Compl. ¶ 85. Additionally, Plaintiff alleges a policy within the Oneida County Correctional Facility that "authorizes corrections officers to strip search inmates without a reasonable basis or for a purpose related solely to the safety of the facility and allows misdemeanor inmates to be strip searched in front of other corrections officers then strap him down to a wheelchair while depriving him of food and medical treatment." Id. ¶ 88. The only facts that are in accord with these pleaded policies are

those that are specific to Plaintiff's case. "[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." Newton v. City of New York, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). Plaintiff states no facts at all that would support the inference that others besides Plaintiff have been affected by these alleged "policies." In order for municipal liability to attach to a single decision, that decision must have been made by a final policymaker that had sufficient power to act on behalf of the municipality. Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986). Plaintiff does not allege actions on behalf of any final policymaker in his original or proposed amended complaints.

In consideration of the lack of plausible allegations concerning a municipal policy, all claims against Oneida County are dismissed. As a result, Plaintiff's claims of "Liability of Town and County for Constitutional Violations" and "Failure to Train and Supervise" are dismissed entirely, as they were alleged solely against the municipality and its departments.

### 3. Section 1983 Claims Against Individual Defendants

#### a. False Arrest

The elements for a claim of false arrest under § 1983 are substantially the same as those under New York law. Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007). The elements are "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). If the arrest was conducted without "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has

committed or is committing a crime," the plaintiff has a claim for false arrest. <u>Jenkins</u>, 478 F.3d at 84 (quoting <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996)).

Plaintiff has plausibly pleaded the first three <u>Savino</u> factors. Plaintiff's arrest itself satisfies intent to confine, and Plaintiff was aware that he was being arrested and confined. Compl. ¶ 55. Additionally, Plaintiff did not consent to the confinement. <u>Id.</u> ¶ 82. Lack of privilege, however, requires a deeper inquiry into probable cause.

The burden of proving that probable cause existed at the time of Plaintiff's arrest lies with Defendants. <u>See</u> <u>Caidor v. M & T Bank</u>, No. 05-CV-297, 2006 WL 839547, at *5 (N.D.N.Y. Mar. 27, 2006) (denying a motion to dismiss since it was not discernible from the plaintiff's complaint whether probable cause existed); <u>see also</u> <u>Hernandez v. City of Rochester</u>, 260 F. Supp. 2d 599, 606 n.6 (W.D.N.Y. 2003) (collecting cases); <u>Mason v. Town of New Paltz Police Dep't</u>, 103 F. Supp. 2d 562, 565 (N.D.N.Y. 2000) (observing that federal and New York cases state that where "an arrest or imprisonment is extrajudicial, that is, without legal process, the burden is on the defendant to prove justification"). Plaintiff states in his Complaint that the actions in dispute were initiated "without reasonable or probable cause or any legal justification." Compl. ¶ 72. Plaintiff also stated that Bauer had initiated contact with him in the courthouse parking lot. <u>Id.</u> ¶ 50. Taken as a whole, Plaintiff's Complaint describes subsequent encounters with Bauer after May 2, 2013, as being lawful. Plaintiff has demonstrated that he had done no acts that would warrant the charges he was given. "[A]n arrest is justified and a claim for false arrest must be dismissed pursuant to Rule 12(b)(6), if the undisputed facts in plaintiff's complaint demonstrate that the arresting officers had probable cause to believe that the suspect had committed a crime." <u>Brewster v. Nassau County</u>, 349 F. Supp. 2d 540, 551 (E.D.N.Y. 2004).

It is unclear from Plaintiff's Complaint whether Defendants had probable cause for the arrest. Therefore, since the Complaint does not allow the Court to determine whether or not probable cause existed at the time of arrest, and since it is the Defendants' burden to prove probable cause, Plaintiff's claim of false arrest against Police Officer John Doe is allowed to proceed.

Defendants state that based upon Plaintiff's Complaint, it is reasonable to assume that it was the Town of Marcy that arrested Plaintiff. Mem. at 8. In their Motion to Dismiss, Defendants reason that since Plaintiff did not specifically allege which law enforcement department arrested him, the logical conclusion is that it was the Town of Marcy Police Department based on the fact that he appeared in Marcy Town Court. Id. Defendants then go on to state that while Plaintiff may have a claim against the Town of Marcy for false arrest, any claim against Oneida County and its officers must be dismissed. Id. The Town of Marcy has been dismissed as a defendant on the grounds that they do not have a police department. Dkt. No. 24. Therefore, it clearly was not the Town of Marcy who arrested Plaintiff and Defendants' argument must fail. The Court will allow the action of false arrest to proceed against Bauer and Police Officer John Doe so that Plaintiff has the opportunity to ascertain the identity of the arresting officers through discovery.

Plaintiff had also brought his false arrest claim against Loconte. In his original Complaint, Plaintiff failed to state any facts indicating that Loconte had any involvement at all in the arrest. However, in his Proposed Amended Complaint, Plaintiff asserts that it was either Loconte or Police Officer John Doe who arrested him. Proposed Am. Compl. ¶ 53. In light of Plaintiff's amended pleadings, the Court will allow Plaintiff's false arrest claim to continue against Loconte as well as Police Officer John Doe.

Bauer was also listed as a Defendant for Plaintiff's false arrest claim in both his original and Proposed Amended Complaint. Compl. ¶ 82; Proposed Am. Compl. ¶ 82. Since Plaintiff makes no mention in his amended pleadings of Bauer aiding in or effectuating the arrest, the false arrest claim against Bauer is dismissed.

### b.  Malicious Prosecution Under Color of State Law

In order to state a claim for malicious prosecution, the plaintiff must allege: (1) the commencement or continuation of a proceeding against him (2) with malice and without probable cause (3) that was terminated in his favor. Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). Probable cause has been defined as "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (quoting Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008)).

In support of their Motion to Dismiss, Defendants state three deficiencies with Plaintiff's pleading of malicious prosecution. First, Defendants argue that Plaintiff has failed to allege a particular individual who has commenced a criminal proceeding against him. Mem. at 6–7. Second, Defendants state that Plaintiff has failed to plead facts demonstrating that the arrest was conducted without probable cause. Id. at 6. Finally, Defendants claim that no facts have been pleaded that would support a finding of malice. Id.

Plaintiff's Complaint, taken in light most favorable to Plaintiff, states that he was served with tickets for stalking, harassment, menacing, and obstructing governmental administration that required his appearance in court in the County of Oneida. Compl. ¶ 72. Plaintiff pleads that

the proceeding was instituted by Oneida County "officers"—although only Police Officer John Doe is listed as a defendant police officer—as well as Bauer, and Loconte. Compl. ¶ 76. Plaintiff has sufficiently pleaded the commencement of an action against him by Police Officer John Doe, Loconte, and Bauer.

Defendants state that Plaintiff has not pleaded a lack of probable cause. Mem. at 6. In order to establish probable cause in a malicious prosecution action, it must be shown that probable cause existed "to charge [the suspect] with *each* of the crimes." Cannistraci v. Kirsopp, No. 10-CV-980, 2012 WL 1801733, at *10 (N.D.N.Y. May 16, 2012) (alteration in original) (quoting Kavazanjian v. Rice, No. 03-CV-1923, 2005 WL 1377946, at *4 (E.D.N.Y. June 7, 2005)). "Malicious prosecution asks whether the facts objectively support a reasonable belief that a criminal prosecution should be initiated or continued because that prosecution could succeed." McClellan v. Smith, No. 02-CV-1141, 2009 WL 3587431, at *6 (N.D.N.Y. Oct. 26, 2009). Where, as it seems to be in this case, the arrest was not pursuant to a warrant, the Court must evaluate whether there was "probable cause to file the complaints that commenced the criminal proceeding against Plaintiff." Lenhard v. Dinallo, No. 08-CV-165, 2011 WL 4592804, at *7 (N.D.N.Y. Sept. 30, 2011). "The probable cause to prosecute inquiry focuses solely on those facts available to the officer leading up to, and at the time of, the arraignment." Simons v. New York, 472 F. Supp. 2d 253, 264 (N.D.N.Y. 2007). If an officer has "knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of," then probable cause for the prosecution exists. Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994) (quoting Pandolfo v. U.A. Cable Sys. of Watertown, 568 N.Y.S.2d 981, 982 (App. Div. 1991)). "The question of whether or not

probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Lenhard, 2011 WL 4592804, at *7 (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).

In his Complaint, Plaintiff states that Bauer and Loconte caused the criminal charges to be instituted against him. Compl. ¶ 76. After his arrest, Plaintiff was taken to court and was seen by the presiding judge without an attorney present. Id. ¶ 56. The presiding judge told Plaintiff "you're going to jail," denied bail, and ordered a mental examination to be performed. Id. The criminal charges brought against Plaintiff were stalking, harassment, menacing, and obstructing governmental administration. Id. ¶ 72. As described previously, these charges were instituted on the basis of interactions with Bauer that appear to be lawful and benign. Plaintiff's Complaint pleads a lack of probable cause for his arrest, and it does not seem that any facts came to light between the time of Plaintiff's arrest and arraignment that would give the prosecutor probable cause for the charges brought against him.

Additionally, Plaintiff satisfactorily pleaded a favorable termination. Plaintiff stated that the charges against him "were dismissed and withdrawn with prejudice upon decision or motion (Order) before Honorable Justice William M. Virkler." Compl. ¶ 32.

As to malice, Rule 8 requires that where state of mind is an element of a claim, that state of mind must be "plausibly pleaded and supported by factual allegations." Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015). However, "a lack of probable cause generally creates an inference of malice." Pizarro v. City of New York, No. 14-CV-507, 2015 WL 5719678, at *4 (E.D.N.Y. Sept. 29, 2015) (quoting Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003)). As stated previously, Plaintiff has pleaded a lack of probable cause. In addition, "[a]lthough

actual malice is subjective, a court typically will infer actual malice from objective facts."

Connolly v. Wood-Smith, No. 11-CV-8801, 2012 WL 7809099, at *9 (S.D.N.Y. May 14, 2012)

(quoting Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 183 (2d Cir. 2000)), adopted as

modified, 2013 WL 1285168 (S.D.N.Y. Mar. 28, 2013); see also Rentas v. Ruffin, 816 F.3d 214,

221–22 (2d Cir. 2016) (finding actual malice inferred based on objective facts and lack of

probable cause). Plaintiff stated that he believed Bauer to be "infuriated" by a statement made by

Plaintiff during their first encounter. Compl. ¶ 41. Plaintiff's Complaint describes that all

subsequent interactions with Bauer were cordial. After Plaintiff was told he could not see Bauer

on May 9, 2013, since Plaintiff was not on the docket, Bauer approached Plaintiff in his vehicle

in the parking lot. Compl. ¶ 50. During that conversation, Bauer inquired as to whether Plaintiff

wanted to have his traffic ticket reduced, and Plaintiff responded affirmatively. Id. Bauer gave

Plaintiff a new court date for resolving the ticket, and then Plaintiff left the parking lot and

proceeded home. Id. ¶ 52. Plaintiff was then subsequently accused of stalking, harassment,

menacing, and obstruction of governmental administration. Id. ¶ 72. The fact that Plaintiff was

charged with these crimes, without probable cause, after supposedly benign interactions with

Bauer is sufficient to suggest that the charges were maliciously commenced.

     Accordingly, Plaintiff's claim of malicious prosecution survives Defendants' Motion to

Dismiss.

c.  Unlawful Strip Search

     The Supreme Court has held that strip searches conducted on detainees who would be

admitted to the general population of a jail could be constitutional. Florence v. Bd. of Chosen

Freeholders, 132 S. Ct. 1510, 1522–23 (2012). The Court articulated that "a regulation impinging

on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" Id. at 1515 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Florence "was not a license for prison staff to conduct strip searches anytime, anywhere, or in any manner." George v. City of New York, No. 12-CV-6365, 2013 WL 5943206, at *7 (S.D.N.Y. Nov. 6, 2013). The decision in Florence was limited in its scope and refrained from discussing the constitutionality of strip searches involving "intentional humiliation and other abusive practices." Florence, 132 S. Ct. at 1523.

Defendants claim that the Supreme Court's decision in Florence is a barrier to Plaintiff's claim of unlawful strip search and that Plaintiff has failed to plead facts that suggest that the strip search was unreasonable or unrelated to legitimate penological interests. Mem. at 15–16. The Court disagrees. Plaintiff's Complaint alleged that he was forced to strip while corrections officers laughed and pointed an object at Plaintiff. Compl. ¶¶ 58–59. Additionally, the facts indicate that Plaintiff was strapped to a chair wearing a clear gown and wheeled "to the lowest floor of the jail, and he was left to sit in the chair, causing Plaintiff to begin to suffer from an anxiety attack and trouble breathing." Id. ¶ 61. On its face, the method of strip searching described by Plaintiff appears to be wholly unrelated to legitimate penological goals. See Jean-Laurent v. Wilkinson, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (holding that a strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish"); see also George, 2013 WL 5943206, at *8 (denying defendants' motion to dismiss where the complaint plausibly alleged that the purpose of the strip search was to make a spectacle and publicly humiliate prisoner plaintiffs). Therefore, Plaintiff has pleaded facts sufficient to indicate that the manner and circumstances of the strip search were

unreasonable. The Court denies Defendants' Motion to Dismiss Plaintiff's claim of unlawful strip search against the individual correctional officers.

### d.  Supervisory Liability

42 U.S.C. § 1983 does not allow for supervisory liability based upon a respondeat superior theory. The plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "Each government official is only liable for his or her own misconduct." Id. at 677. Personal involvement may be shown by alleging

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[4]

---

[4]  The Second Circuit has not yet addressed how the Supreme Court's decision in Iqbal may have affected the standards articulated in Colon for establishing supervisory liability. See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but not reaching the impact of Iqbal on Colon because the complaint "did not adequately plead the Warden's personal involvement even under Colon"); see also Hogan v. Fischer, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [Iqbal] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations") (citing Grullon, 720 F.3d at 139). The Court assumes here that Colon remains good law.

Plaintiff's Complaint fails to state exactly which supervisors violated his constitutional rights and the nature of their involvement.[5] Plaintiff makes statements such as "supervisory Defendants were personally involved in failing to take preventative and remedial measures to guard against such constitutional deprivations, such that Plaintiff would not have been injured." Compl. ¶ 137. Additionally, the Complaint states without further elaboration that the "supervisory Defendants were personally involved in additional deprivation of Plaintiff's rights." Id. ¶ 138. "'Conclusory statements and formulaic recitations of the Colon factors [that are] wholly unsupported by facts,' present no factual support for a supervisory liability claim." Gray-Davis v. New York, No. 14-CV-1490, 2015 WL 2120518, at *8 (N.D.N.Y. May 5, 2015) (alteration in original) (quoting Eldridge v. Kenney, No. 11-CV-6459, 2014 WL 2717982, at *3 (W.D.N.Y. June 16, 2014)). Because Plaintiff has failed to plead facts that meet the plausibility standard, his claim for supervisory liability is dismissed.

### e.  Malicious Abuse of Process

To state a claim for malicious abuse of process, a plaintiff must allege that a defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Hoffman v. Town of Southampton, 523 F. App'x 770, 771 (2d Cir. 2013) (summary order) (alterations in original) (quoting Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003)).

---

[5] Plaintiff names Sergeant John Doe as a defendant but fails to mention Sergeant John Doe anywhere else in his Complaint. As Plaintiff has alleged no personal involvement of Sergeant John Doe in any deprivation of Plaintiff's constitutional rights, Sergeant John Doe is terminated as a Defendant.

"The crux of a malicious abuse of process claim is the collateral objective element."

McHenry v. Bell, No. 13-CV-657, 2015 WL 2354438, at *9 (N.D.N.Y. May 15, 2015). The Court agrees with Defendants' statement that Plaintiff has failed to adequately plead the element of a collateral objective. Mem. at 9. In pleading malicious abuse of process, Plaintiff recites the elements and states that Defendants "arrested Plaintiff and/or caused the arrest, of Plaintiff in order to obtain a collateral objective outside the legitimate ends of legal process." Compl. ¶ 86. A generous reading of the Complaint suggests that Plaintiff believes the charges were brought in retaliation for Plaintiff's insinuation to Bauer that there was a lot of fraud in the county.

"[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Savino, 331 F.3d at 77. "The gist of the action for abuse of process lies in the improper use of process after it is issued." Sullivan v. Laplante, No. 03-CV-359, 2005 WL 1972555, at *8 (N.D.N.Y. Aug. 16, 2005) (quoting Dean v. Kochendorfer, 143 N.E. 229, 231 (N.Y. 1924)). The most that can be inferred from Plaintiff's Complaint is that Bauer had improper motives in initiating legal process. There are no pleaded facts indicating improper use of process after it was issued. There are no facts indicating a collateral objective. Plaintiff properly pleaded a claim for malicious prosecution, but is unable to do the same for malicious abuse of process. However, while Plaintiff's malicious abuse of process claim was pleaded insufficiently, Plaintiff omits the claim in his Proposed Amendment Complaint. Therefore, Defendants' Motion to Dismiss the claim of malicious abuse of process is denied as moot.

### f.  Attorney Fees

Plaintiff asserts a cause of action for attorney's fees. Compl. ¶ 143–44. As Defendants correctly observe, attorney fees are a remedy, not a cause of action. See Carvel v. Franchise Stores Realty Corp., 08-CV-8938, 2009 WL 4333652, at *9 (S.D.N.Y. Dec. 1, 2009) ("Section 1988 only grants attorneys' fees to a prevailing party under §§ 1981–83, it does not create an independent cause of action."). Therefore, without addressing the possibility of attorney's fees as a remedy, Plaintiff's standalone cause of action for attorney's fees is dismissed.

### g.  Prosecutorial Immunity for Defendant Bauer

A prosecutor enjoys absolute immunity for the "initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). "The doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney, as it provides that 'prosecutors are absolutely immune from liability under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case," insofar as that conduct is "intimately associated with the judicial phase of the criminal process."'" Pinaud v. County of Suffolk, 52 F.3d 1139, 1147 (2d Cir. 1995) (quoting Burns v. Reed, 500 U.S. 478, 486 (1991)). So long as the actions of a district attorney are clearly within the "judicial phase of the criminal process," he is absolutely immune to civil suits to damages. Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). However, absolute immunity does not cover all conduct by a prosecutor. "When a prosecutor is engaged in administrative or investigative activities, he is entitled only to qualified immunity, which requires a showing that his acts were objectively reasonable." Day, 909 F.2d at 77. "A prosecutor is functioning in an investigatory capacity in a criminal case up and until he or she has gathered sufficient evidence to

demonstrate probable cause and effect an arrest." Tellier v. Petrillo, No. 95-CV-211, 1996 WL 734885, at *2 (S.D.N.Y. Dec. 23, 1996). "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" Buckley, 509 U.S. at 273 (quoting Hampton v. Chicago, 484 F.2d 602, 608 (7th Cir. 1973)).

At this stage in litigation, the Court is unable to determine whether Bauer is entitled to prosecutorial immunity. While Plaintiff's Complaint and subsequent materials do not specify in detail the precise actions taken by Bauer, Plaintiff does accuse Bauer of actions that are outside of the judicial process. Plaintiff asserts that Bauer ordered the state police or Oneida County police to follow Plaintiff in a car. Proposed Am. Compl. ¶ 52. No arrest was effectuated at that time, which suggests that this event was prior to any potential probable cause that may have arisen later. If Bauer ordered officers to follow Plaintiff before probable cause existed for an arrest, Bauer was acting as an investigator and not as an advocate. "[W]hen a prosecutor manufactures evidence for the purpose of obtaining probable cause to arrest a suspect," the actions are deemed to be investigatory in nature and cannot be "transformed into advocacy simply by being characterized as work in preparation for trial." Hill v. City of New York, 45 F.3d 653, 662–63 (2d Cir. 1995). "[A] prosecutor is not entitled to absolute immunity in situations such as those where he 'supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest . . . .'" Morris v. Martin, No. 16-CV-601, 2016 WL 4059209, at *6 (N.D.N.Y. June 21, 2016) (quoting Richards v. City of New York, No. 97-CV-7990, 1998 WL 567842, at *2 (S.D.N.Y. Sept. 3, 1998)), adopted, 2016

U.S. Dist. LEXIS 98404 (N.D.N.Y. July 28, 2016). The Court therefore finds that Bauer is not currently entitled to absolute prosecutorial immunity.[6]

### B. New York State Tort Claims

Plaintiff alleged the following state claims against Defendants: (1) false imprisonment; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) negligence; (5) negligence in hiring, screening, retention, supervision, and training; (6) respondeat superior liability; and (7) trespass under color of state law.

Defendants observe that Plaintiff has failed to comply with General Municipal Law section 50-e, which requires that notice of a claim be given within ninety days after the claim arises. N.Y. Gen.Mun. Law § 50-e; Mem. at 5. "As a 'condition precedent' to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, New York General Municipal Law § 50-e requires plaintiffs to file a notice of claim within ninety days after the claim arises." Olsen v. County of Nassau, No. 05-CV-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 5, 2008) (citing Chesney v. Valley Stream Union Free Sch. Dist., No. 05-CV-5106, 2006 WL 2713934, at *8 (E.D.N.Y. Sept. 22, 2006)). "Notice of claim requirements are generally strictly construed, and failure to comply with the requirements typically results in dismissal due to failure to state a cause of action." Chesney, 2006 WL 27139345, at *9 (citing Hardy v. N.Y.C. Health & Hosps. Corp., 164 F.3d 789, 793–94 (2d Cir.

---

[6] Neither party has presented arguments as to whether individual Defendants are entitled to qualified immunity. However, it has been noted that, "[g]iven the factual nature of the qualified immunity inquiry, it is an issue 'often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed.'" Rubeor v. Town of Wright, No. 13-CV-612, 2016 WL 3199510, at *3 (N.D.N.Y. June 8, 2016) (Kahn, J.) (quoting Walker v. Schult, 717 F.3d 119, 129 (2d Cir. 2013)). Therefore, the Court declines to address qualified immunity at this point.

1999)); see also Dzwonczyk, 710 F. Supp. 2d at 271–72 (dismissing state law tort claims due to failure to comply with section 50-e). Plaintiff has withdrawn his state tort claims in his Proposed Amended Complaint. As a result, Defendants' Motion to dismiss the state claims is denied as moot.

### C. Plaintiff's Motion to Amend

Plaintiff's Proposed Amended Complaint specifies that it was either Loconte or Police Officer John Doe who arrested Plaintiff. Proposed Am. Compl. ¶ 53. Specifically, Plaintiff adds facts alleging the personal involvement of Bauer that would vitiate Bauer's entitlement to prosecutorial immunity. Proposed Am. Compl. ¶ 52. Plaintiff's Proposed Amended Complaint is still sparse, and barely passes the threshold of plausibility in regard to the claims that do manage to survive Defendants' Motion to Dismiss. However, based upon the standard for amendments stated in Foman, Plaintiff is entitled to amend his Complaint. Discovery may result in Plaintiff being able to add to the narrative of the circumstances surrounding his claim. Plaintiff is also permitted to amend his Complaint by adding his claims of excessive force and failure to intervene for the following reasons.

#### 1. Claim of Excessive Force

There appears to be some general confusion between the parties as to what constitutional amendment applies to Plaintiff's claim of excessive force. Plaintiff has pleaded that excessive force during his strip search was in violation of his Fourth Amendment right to be free from unreasonable searches, seizures, and excessive force by officers. Proposed Am. Compl. ¶ 110. Defendants address the constitutionality of the strip search under the Eighth Amendment as well

as the Fourth, implying that his alleged strip search might be a violation of the Eighth Amendment. Reply at 6.

The correct authority for Plaintiff's excessive force claim is the Due Process Clause of the Fourteenth Amendment. The Eighth Amendment would not apply in this matter, as "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977). According to the Complaint, Plaintiff at no point was adjudged guilty, and certainly not at the point at which the strip search allegedly occurred. Instead, courts have evaluated excessive force claims by pretrial detainees under the Due Process Clause of the Fourteenth Amendment. Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). However, the standards for a claim of excessive force under the Fourteenth Amendment are substantively the same as those brought under the Eighth Amendment. Bellatto v. County of Orange, 248 F. App'x 232, 235 (2d Cir. 2007).

To prevail in an Eighth Amendment claim of excessive force, "the use of force 'must be, objectively, sufficiently serious,' and 'the prison official involved must have a sufficiently culpable state of mind.'" Id. (quoting Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997)). The objective component is "contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). While there is generally some degree of injury required, "the injury need not be 'serious' or 'significant' 'as long as the amount of force used is not *de minimis*.'" Bellotto, 248 F. App'x at 235 (quoting United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)). For strip searches it is required that a plaintiff "allege that the defendants engaged in egregious conduct." Holland v.

25

City of New York, No. 14-CV-5517, 2016 WL 3636249, at *9 (S.D.N.Y. June 24, 2016). "Even where inmates allege aggressive or inappropriate behavior during strip searches, courts are reluctant to find that such activity rises to the objectively serious level of an Eighth Amendment violation." Vaughn v. Strickland, No. 12-CV-2696, 2013 WL 3481413, at *3 (S.D.N.Y. July 11, 2013). The subjective element is based upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7.

Plaintiff's Complaint contended that the strip search occurred "for the purpose of harassing and intimidating Plaintiff [by] forcing him to remove his clothing with other officers present as they laughed and mocked him then forcibly pointing an object in Plaintiff's face and forcibly strapping him down to a wheeled chair and wheeling him to the basement of the facility without any food or drink for 24 hours." Proposed Am. Compl. ¶ 111. The actions alleged by Plaintiff do not rise to the level of a constitutional violation. Plaintiff does not assert any actual physical contact between his person and whatever object was pointed in his face. Physical contact may not be necessary for an excessive force claim to succeed. See, e.g., Cortez v. McCauley, 478 F.3d 1108, 1131 (10th Cir. 2007) ("Physical contact is not required for an excessive force claim—patently unreasonable conduct is."); Snoussi v. Bivona, No. 05-CV-3133, 2008 WL 3992157, at *5–6 (E.D.N.Y. Aug. 21, 2008) (acknowledging that the law is unsettled as to whether physical contact is necessary); Duggan v. City of League City, 975 F. Supp. 968, 971 (S.D. Tex. 1997) ("[T]he law is uncertain regarding whether an excessive force claim can arise without physical injury to the Plaintiff."). However, Plaintiff has not pleaded sufficiently

egregious conduct flowing solely from the strip search to rise to the level of a Fourteenth Amendment excessive force claim.

Courts have routinely declined Eighth Amendment claims arising from strip searches, even where the strip search was determined to be for the sole purpose of humiliation. George v. City of New York, No. 12-CV-6365, 2013 WL 5943206, at *9 (S.D.N.Y. Nov. 6, 2013). Furthermore, in George, the court noted that "the law of this Circuit indicates that a strip search without elements of sexual harassment, excessive force, or indeed any physical contact at all is not 'sufficiently serious' under the objective prong to support a claim . . . under the Eighth Amendment." Id. at *10. Plaintiff has not plausibly alleged facts suggesting sexual harassment or any physical contact. As written, Plaintiff's Complaint suggests that Plaintiff stripped under the threat of whatever object the correctional officers were holding, but there does not appear to have been any physical contact between Plaintiff and either the object or the correctional officers. Proposed Am. Compl. ¶ 56. On its own, the strip search would not be "objectively, sufficiently serious" as to rise to the level of an Eighth—and therefore Fourteenth—Amendment excessive force claim.

However, Plaintiff also alleged that his constitutional rights were violated by correctional officers "forcibly strapping him down to a wheeled chair and wheeling him to the basement of the facility without any food or drink for 24 hours." Proposed Am. Compl. ¶ 111. "While no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (citing Moss v. Ward, 450 F. Supp. 591, 596–97 (W.D.N.Y. 1978)). Although neither the

27

strip search, nor the deprivation of food by itself would generally constitute a claim of excessive force, in the aggregate the events of Plaintiff's pretrial detention are sufficient to plead a claim of excessive force. See Ziemba v. Armstrong, 343 F. Supp. 2d 173, 185 ("A twenty-two hour restraint with no penal justification, no food or water, and no access to the bathroom would constitute excessive force."). The Court therefore allows Plaintiff to amend his Complaint to add a claim of excessive force.

### 2. Failure to Intervene

Correctional officers can be held responsible for failing to intervene when they witness a fellow officer violating the constitutional rights of an inmate. Philips v. Lecuyer, No. 08-CV-878, 2013 U.S. Dist. LEXIS 36452, *14 (N.D.N.Y. Feb. 19, 2013). An officer has failed to intervene when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Plaintiff's failure to intervene claim appears to be based upon the excessive force claim. Proposed Am. Compl. ¶ 117. Plaintiff's Proposed Amended Complaint stated that "Defendants Correction's Officer Chapman and Corrections Officers John Doe 1–6 were present at said times and places." Id. Plaintiff's Proposed Amended Complaint is sparse in pleading this claim. However, if, as Plaintiff alleged, other correctional officers were present during the events giving rise to Plaintiff's excessive force claim, then Plaintiff may also have a claim for failure to intervene. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury, unless, considering all the

evidence, a reasonable jury could not possibly conclude otherwise." <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994). Plaintiff claimed that he was strapped to a chair for twenty-four hours and was denied meals during that time. Proposed Am. Compl. ¶ 61–62. There are sufficient facts to indicate that a jury could find that other correctional officers had sufficient time to intercede. Therefore, Plaintiff is allowed to amend his Complaint to include a claim of failure to intervene.

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 10) is **GRANTED in part** as to claims against Oneida County and its departments, claims of supervisory liability, and attorney fees, and **DENIED in part**, as to Plaintiff's claims of malicious prosecution, false arrest, and unlawful strip search against the individual Defendants in their individual capacities; and it is further

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 10) is **DENIED as moot in part** as to all New York state law tort claims and claims of malicious abuse of process; and it is further

**ORDERED**, that Oneida County, Oneida County District Attorney's Office, Oneida County Police Department, Oneida County Sheriff's Department, Oneida County Correctional Facility, and Sergeant John Doe are terminated as Defendants; and it is further

**ORDERED**, that Plaintiff's Motion to Amend (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff file an amended complaint within **thirty (30) days** consistent with this Memorandum-Decision and Order that will be deemed the operative pleading in this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      August 12, 2016
            Albany, New York


Lawrence E. Kahn
U.S. District Judge